```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
―――――――――――――――――――――――――――――――

SHARON DENISE BAILEY,

                Plaintiff,          14-cv-8454 (JGK)

      - against -                **MEMORANDUM OPINION AND ORDER**

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

―――――――――――――――――――――――――――――――

**JOHN G. KOELTL, District Judge:**

    The plaintiff, Sharon Bailey, brought this action to review a final decision of the defendant, the Commissioner of Social Security (the "Commissioner"), that the plaintiff was not entitled to Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act").  After the plaintiff's claims for SSI benefits were initially denied on April 13, 2012, the plaintiff filed a written request for a hearing.  The Administrative Law Judge (ALJ) held a hearing on December 5, 2012 and denied the plaintiff's claim on January 14, 2013.  The Appeals Council denied the plaintiff's request for review on August 22, 2014, and the ALJ's decision thus became the final decision of the Commissioner.

    The plaintiff then commenced this action seeking to review the Commissioner's decision.  The Commissioner filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  The plaintiff did not respond.  After twice

extending the plaintiff's time to respond to no avail, the Court now decides the motion on the papers before it.

## I.

The administrative record contains the following facts.

The plaintiff, born August 18, 1962, has an eleventh grade education. (AR 52, 81). Most recently, the plaintiff worked as a building caretaker for the New York City Housing Authority. (AR 52-53). That job included sweeping, mopping, cleaning, and working with trash compactors. (AR 53-54). The plaintiff testified that the job required her to lift up to fifty pounds. (AR 54).

On April 7, 2011, the plaintiff was treated at Mount Sinai Medical Center after she had fallen down six steps. (AR 128-31). The plaintiff was discharged and was able to leave the hospital on her own, walking without assistance. (AR 129). A little more than two months later, on June 28, 2011, the plaintiff experienced lower back and abdominal pain after lifting heavy garbage bags, and she again sought treatment at Mount Sinai. (AR 133-36, 144). In connection with this injury, the plaintiff sought and received New York Workers' Compensation benefits. (AR 144-49). On February 3, 2012, the plaintiff was examined by her doctor, Dr. Ramkumar Panhani, who noted that the plaintiff wished to return to work. (AR 314). Dr. Panhani stated that the plaintiff could return to full duty. (AR 314).

2

The plaintiff returned to work on February 12, 2012. (AR 138). Two days later, the plaintiff returned to Mount Sinai complaining of lower back pain experienced after lifting heavy objects at work. (AR 138). The plaintiff again filed for Workers' Compensation benefits. (AR 150-51). The plaintiff also saw Dr. Mark Heyligers, a chiropractor who had treated her for her prior injury. (AR 438, 514-16). The plaintiff applied for SSI benefits on March 20, 2012 in connection with this injury. (AR 100-07).

The plaintiff met with several doctors to treat her injuries. Dr. Kevin Wright, an orthopedic surgeon who met with the plaintiff on March 20, 2012, found that the plaintiff "is a well-developed and well-nourished female with a normal gait and affect." (AR 414-15). Dr. Wright determined that the plaintiff's right shoulder pain was caused by "possible internal derangement and possible arthritis." (AR 415). He requested that the Workers' Compensation Board authorize physical therapy and an MRI of the plaintiff's right shoulder. (AR 415). Dr. Wright also prescribed Naprosyn (commonly known under the brand-name Aleve). (AR 415). The plaintiff received physical therapy from CMS Physical Therapy from February 17, 2012 to July 23, 2012. (AR 553-63).

The plaintiff was seen by Dr. Panhani on April 20, 2012 for neck pain, lower back pain, and right shoulder pain. Dr.

3

Panhani's plan was to continue with physical therapy three times a week and to have the plaintiff obtain an orthopedic consultation. (AR 548-59). The plaintiff saw Dr. Panhani again on May 11, 2012. The plaintiff was diagnosed with pain in her spine and a right shoulder contusion. Dr. Panhani's ongoing plan was to continue physical therapy, chiropractic treatment, over-the-counter medication, and have the plaintiff obtain a pain management consultation. The plaintiff was to be assessed again in four weeks. (AR 550-51).

The plaintiff also received care from her chiropractor, Dr. Heyligers. The plaintiff saw Dr. Heyligers approximately two to three times a week, and she received essentially the same treatment each time: moist heat, spinal adjustment, and trigger point therapy. (AR 514-41). The plaintiff typically reported feeling "about the same" since the prior visit, while feeling "slightly better" at the end of each session. (See, e.g., AR 518; see also AR 519-41). Following the sessions, Dr. Heyligers would typically complete a Workers' Compensation form where he would state that the plaintiff was "100%" temporarily impaired and could not return to work "due to [the] nature of [her] injuries." (See, e.g., AR 242; see also AR 266, 275, 279).

The ALJ provided the above-referenced information to Dr. Charles Plotz, an arthritis specialist, who was asked to testify at the plaintiff's December 5, 2012, hearing. (AR 31). Dr.

4

Plotz testified that, based on his review of the plaintiff's records and her testimony at the hearing, the plaintiff should be able to stand and walk for six hours out of an eight-hour day, with no limitation on sitting. (AR 63). He also testified that the plaintiff would not be able to lift or carry more than ten pounds. (AR 63). Further, due to the plaintiff's shoulder pain, Dr. Plotz testified that the plaintiff should not reach overhead with her right arm. (AR 63-64). The plaintiff had no questions for Dr. Plotz at the hearing. (AR 64).

Dr. Steven Feinstein, a vocational expert, also testified at the hearing. Dr. Feinstein testified that a person with the plaintiff's characteristics and impairments would have available employment as an usher in both the local and national economy, as well as work as an office helper and as a messenger. (AR 16, 64-65).

On January 14, 2013, the ALJ issued his decision denying benefits. (AR 8-18). The ALJ evaluated the plaintiff's claims for SSI pursuant to the five-step evaluation process set forth in 20 C.F.R. § 416.920. (AR 8-16). First, the ALJ found that the plaintiff did not engage in substantial gainful activity after the date disability was alleged to have begun. (AR 10). Second, the ALJ found that the plaintiff had a severe impairment consisting of lumbosacral strain with myofascial pain. (AR 10). Third, the ALJ found that the impairments in question were not

5

the same as or medically equivalent to any listed impairment sufficient to entitle the plaintiff to benefits. (AR 10).  The ALJ specifically noted the plaintiff's ability to ambulate effectively. (AR 10).  Fourth, the ALJ assessed the plaintiff's residual functional capacity and found that the plaintiff retained the capacity to engage in "a wide range of light work," except that the plaintiff was limited to carrying only ten pounds and should avoid upward (overhead) reaching with her right arm. (AR 11).  The ALJ determined that the plaintiff was unable to perform her past work as a caretaker. (AR 15).  Fifth, the ALJ considered the plaintiff's vocational factors and her residual functional capacity, relying on the testimony of the vocational expert, and determined that the plaintiff could perform work in both the regional and national economy. (AR 15-16).  Therefore, the ALJ concluded that the plaintiff was not disabled within the meaning of the Act and denied the claim for SSI benefits. (AR 16).

The plaintiff appealed to the Appeals Council. (AR 4).  The Appeals Council declined review of the plaintiff's claims, finding no reason to review the ALJ's decision. (AR 1).  The ALJ's determination thus became the final decision of the Commissioner.  The plaintiff's appeal to this Court followed.

**II.**

A court may set aside the Commissioner's decision only if it is based on legal error or not supported by substantial evidence in the record. See 42 U.S.C. § 405(g) (made applicable to SSI cases by 42 U.S.C. § 1383(c)(3)); Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) as amended on reh'g in part, 416 F.3d 101 (2d Cir. 2005). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)) (internal quotation marks and alterations omitted).

A claimant seeking SSI benefits is considered disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

The analytical framework for evaluating claims of disability for SSI is set out in 20 C.F.R § 416.920(a). In essence,

> if the Commissioner determines (1) that the claimant is not working, (2) that [s]he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant

>     is not capable of continuing in [her] prior type of work,
>     the Commissioner must find [her] disabled if (5) there
>     is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (citations omitted); see also Mitchell v. Colvin, No. 14cv04154 (JGK), 2015 WL 5306208, at *4 (S.D.N.Y. Sept. 10, 2015).[1]  The claimant must first establish a disability under the Act (the framework's first four steps). See Burgess, 537 F.3d at 120.  If the claimant satisfies the first four steps, the Commissioner must establish, taking into account the claimant's residual functional capacity (and any limits), that there is still work the claimant could perform in the national economy (the framework's fifth step).[2] See id.; see also Mitchell, 2015 WL 5306208, at *4.

---

[1]  The definition of "disability" and the five-step process for determining disability are the same for Disability Insurance Benefits under Title II of the Act and SSI benefits under Title XVI of the Act, and cases under both Titles can be used interchangeably.  See, e.g., Diaz v. Barnhart, No. 05cv3392 (JGK), 2007 WL 1815485, at *2 n.2 (S.D.N.Y. June 15, 2007).

[2] The ALJ appears to have slightly misstated this standard when he wrote that, "Although the claimant generally continues to have the burden of proving disability at this [fifth] step, a limited burden of going forward with the evidence shifts to the Social Security Administration." (AR 10).  "At step five the burden shifts to the Commissioner to show there is other gainful work in the national economy which the claimant could perform." Butts, 388 F.3d at 383 (internal quotation marks omitted).  However, the ALJ properly performed the fifth step analysis. (AR 15-16).  Therefore, any misstatement is harmless.

**III.**

The Court reviews the ALJ's determination according to the same five-step process used by the ALJ. In this case, judgment on the pleadings should be granted in favor of the Commissioner, dismissing this case. The ALJ carefully evaluated the plaintiff's claims of physical impairments, and there is substantial evidence to support the ALJ's determination that the plaintiff was not disabled under the Act.

At step one, the ALJ correctly found that the plaintiff was not engaged in substantial gainful activity after she filed her claim for benefits on March 20, 2012. (AR 10).

At step two, the ALJ correctly found that the plaintiff had impairments that qualified as "severe" based on the requirements in the regulations. (AR 10). To be "severe," a claimant's impairment or combination of impairments must significantly limit her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). Here, the evidence establishes that the plaintiff had severe impairments due to lumbosacral strain and myofascial pain, limiting her ability to lift items beyond the ten pound level. (AR 62-63). Dr. Plotz, after having reviewed the plaintiff's file, testified to that effect. (AR 62-63) ("[L]ifting and carrying should not be done beyond the 10 pound level.").

At step three of the five-step process, the ALJ then determined that the plaintiff's impairments did not meet or medically equal the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 10).  The ALJ specifically considered possible listed impairments and concluded that the plaintiff's symptoms and diagnoses did not equal those listed impairments.

The ALJ next considered to what extent the plaintiff's impairments limited the plaintiff's ability to function, in order to determine whether the plaintiff would be able to resume her past relevant work (step four) and, if not, whether there would be any work available to her in the national economy (step five).  The ALJ determined that the plaintiff had the residual functional capacity to perform light work, with a limitation on lifting ten pounds and reaching with her right arm.[3]  In reaching this conclusion, the ALJ placed significant weight on the opinion of Dr. Plotz, an internist/arthritis specialist.  (AR 14).

---

[3] Light work is defined as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and includes work that may require "a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls."  20 C.F.R. § 416.967(b); see also Diaz, 2007 WL 1815485, at *5 n.4.

The ALJ also correctly discounted some of the plaintiff's testimony about the severity of some of her symptoms. The plaintiff testified that she cooks, cleans, and shops with her children. (AR 57). The plaintiff also testified at the hearing that she took her seven year-old daughter to school and picked her up. (AR 11, 57-58). The plaintiff initially testified that she could only lift one pound, but later she stated that she could not lift over five pounds (AR 57, 65). The plaintiff also testified that she could only sit for ten minutes and later testified that she was able to sit through movies once a month (AR 57, 59). The plaintiff also testified that she attends hour-long church services weekly, although it is unclear whether she sits through the entire service. (AR 59). The plaintiff also testified that she signed up for some kind of vocational education, with the goal of obtaining "office work." (AR 60). The ALJ carefully analyzed the plaintiff's testimony in determining that it was both internally inconsistent as well as inconsistent with other evidence in the record. (AR 11-12).

The ALJ has the responsibility to determine the relative weight of the evidence presented and to resolve conflicts in the evidence presented. See Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002). The ALJ was required to give controlling weight to the opinion of a treating source as to the nature and severity of an impairment if it was well-supported by medically accepted,

11

clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence in the record. For example, a treating physician's opinion may be given less weight if "other substantial evidence in the record conflicts with the treating physician's opinion . . . [a]nd the less consistent that opinion is with the record as a whole, the less weight it w[ould] be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). The ALJ was required to provide "good reasons" for the weight given to the opinion of a treating source. 20 C.F.R. § 416.927(c)(2).

The ALJ properly explained his relative weighing of the evidence in the record. The ALJ noted that the plaintiff's treating physician, Dr. Panhani, is a pulmonologist working outside his area of expertise, rendering his medical findings less persuasive. See 20 C.F.R. § 416.927(c)(5); see also Turley v. Sullivan, 939 F.2d 524, 527 (8th Cir. 1991) (per curiam) ("As with any expert witness, the treating physician's opinion is subject to criticism as being outside his or her area of expertise."). Moreover, Dr. Panhani did not note any disability condition. The ALJ also properly gave the opinions of Dr. Heyligers little weight. Heyligers, as a chiropractor, is not considered an "acceptable medical source" according to the applicable regulations. See 20 C.F.R. § 416.913(d)(1) (listing "chiropractors" under "Other sources"); see also Hartranft v.

12

Apfel, 181 F.3d 358, 361 (3d Cir. 1999) ("[A] chiropractor's opinion is not 'an acceptable medical source' entitled to controlling weight."), Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir. 1995) ("Because the regulations do not classify chiropractors as either physicians or 'other acceptable medical sources,' chiropractors cannot provide *medical* opinions." (emphasis in original)).  In this case, the ALJ did consider the evidence presented by Dr. Heyligers, and he agreed with Dr. Heyligers that the plaintiff is unable to resume her past relevant work. (AR 15).  The opinion of Dr. Plotz, an internist/arthritis specialist, was given "great weight because it is consistent with the record as a whole." (AR 14).  The ALJ appropriately placed great weight on the testimony of Dr. Plotz, an internist/arthritis specialist, who had reviewed the plaintiff's medical records and explained the plaintiff's limitations, which were consistent with a residual functional capacity to do light work with a limitation on lifting more than ten pounds and reaching with her right arm. (AR 61-64).

There is substantial evidence in the record supporting the ALJ's determination that the plaintiff's impairments are not so severe as to render her disabled.  That conclusion is supported by the plaintiff's own testimony of her activities, (AR 56-59), her desire to find "office work," (AR 60), and by Dr. Plotz's testimony regarding the plaintiff's impairments based on his

13

review of the records, (AR 61-64,) and the records, themselves. See Butts, 388 F.3d at 384.

The ALJ, therefore, properly moved to the fifth and final step of the analysis, determining whether work existed that the plaintiff could perform in the local or national economy.  The ALJ heard testimony from a vocational expert, Dr. Steven Feinstein.  Dr. Feinstein testified that there were substantial jobs as an usher, office helper, and messenger available to a person with the plaintiff's age, education, prior work experience, and her residential functional capacity and limitations. (AR 64-65).  The ALJ relied on these available employment opportunities in his decision. (AR 16).  The ALJ then correctly concluded that "considering the claimant's age, education, work experience, and residual functional capacity, the clamant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and found the plaintiff "not disabled." (AR 16). Because the ALJ's determination was supported by substantial evidence and because there was no legal error, the decision is affirmed.

In her Complaint, the plaintiff states that her disability began on February 14, 2012.  If the plaintiff's condition has deteriorated during the pendency of this action, she can apply

14

again for benefits. See Webster v. Astrue, No. 10cv4054 (JGK), 2011 WL 3518266, at *5 (S.D.N.Y. Aug. 11, 2011).

## CONCLUSION

For the foregoing reasons explained above, the defendant's motion for judgment on the pleadings is **granted**, and the Commissioner's decision is **affirmed**. The Clerk is directed to enter judgment and to close this case.

**SO ORDERED.**

**Dated:  New York, New York
         January 21, 2016**               _____/s/_____
                                                **John G. Koeltl
                                           United States District Judge**